IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.S., et al., | : | CIVIL ACTION |
| | : | No. 13-2312 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM PENN SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         April 10, 2014

        Plaintiffs A.S., a minor student, and L.G., her parent
(collectively, "Plaintiffs"), bring this against Defendant
William Penn School District ("the District") alleging that the
District failed to provide A.S. with a free and appropriate
public education, in violation of the Individuals with
Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq.
Plaintiffs also allege that they were denied an impartial due
process hearing, in violation of the IDEA and the Due Process
Clause of the Fourteenth Amendment. The District has moved to
dismiss the complaint, and the Court, after notice to the
parties and an opportunity to supplement, has treated that
motion as one for summary judgment, in accordance with Federal
Rule of Civil Procedure 12(d). For the reasons that follow, the

Court will grant the motion and dismiss Plaintiffs' complaint in its entirety.

## I. BACKGROUND

A.S. was enrolled as a student in the District from September 2011 to November 2012. Compl. ¶ 8, ECF No. 3; Hearing Officer Decision ¶ 30, ECF No. 23-2. Due to concerns about A.S.'s academic performance, the District conducted an evaluation of her during the spring of 2012 and issued a final Evaluation Report on May 25, 2012. Compl. ¶ 13; Hearing Officer Decision ¶ 10. Among other findings, the Evaluation Report found that A.S. met the eligibility criteria for a specific learning disability in the areas of reading, written expression, and math. Hearing Officer Decision ¶ 17.

In August 2012, A.S.'s parent was informed that the District intended to place A.S. at a different elementary school for the 2012-13 school year. Id. ¶ 23; Compl. ¶ 14. The parent retained counsel in September 2012, and subsequently filed a "stay put" complaint with the Office of Dispute Resolution ("ODR") to prevent the transfer from happening. Compl. ¶¶ 15-16, 19. After the "stay put" complaint was denied, allowing the transfer to occur, the parent filed a complaint with the ODR alleging that the District had denied A.S. a free and appropriate public education by not timely and appropriately evaluating her for a disability (the "FAPE Complaint"). Compl.

¶¶ 16-17; Br. Supp. Mot. Dismiss 2, ECF No. 10-1. On October 28, 2012, the parent amended the FAPE Complaint to add claims of discrimination and other violations of the IDEA. ECF No. 15-4.

At around the same time, the parent also requested that the District pay for an "Independent Educational Evaluation" ("IEE") of A.S., contending that the District's Evaluation Report was inadequate. The District rejected that request and initiated its own due process hearing against the parent to defend its report (the "IEE Complaint"). Compl. ¶ 21; Hearing Officer Decision 2. Although the IEE Complaint had a distinct case number from the FAPE Complaint filed by the parent, as it constituted a separate action brought by the District, the ODR assigned the two complaints to the same Hearing Officer and they were consolidated into one due process hearing. Hearing Officer Decision 2. On November 19, 2012, the parties were notified that the due process hearing was scheduled to occur on January 23-25, 2013. Id.

On the morning of January 17, 2013, Plaintiffs' counsel sent the Hearing Officer an email stating that a "family emergency" had developed and as a result the parent would be out of the state during the hearing dates. ECF No. 31-2, at 2. Counsel advised the Hearing Officer that she had given the parent the option of either requesting a continuance of the hearing, or withdrawing the complaint and refiling it at a later

date. A few hours later, Plaintiffs' counsel sent a second email informing the Hearing Officer and the District that Plaintiffs were moving to voluntarily dismiss the complaint because the parent could not attend the hearing. See ECF No. 10-9.

The Hearing Officer responded that evening, and explained that Plaintiffs could dismiss the FAPE Complaint but not the IEE Complaint, which had been filed by the District. Id. The Hearing Officer further noted that Plaintiffs' counsel had not actually requested a continuance. If Plaintiffs intended to move for a continuance, the Hearing Officer indicated that the motion "must explain what the emergency is and when the Parent will be available for the hearing." Id.

A few days later, on January 21, Plaintiffs' counsel sent another email. She reiterated Plaintiffs' intent to "voluntarily dismiss without prejudice [the] due process hearing complaint due to exigent circumstances." ECF No. 10-7. She also asked that the hearing be continued in order to enable the parent to participate. Id. She did not elaborate on the nature of the "exigent circumstances," however, nor did she specify when the parent might be available.

That afternoon, the Hearing Officer responded with two emails. First, he confirmed that the parent had withdrawn the FAPE Complaint and formally dismissed the matter. ECF No. 10-8. That email clearly stated at the top in bold letters: "This

4

email pertains to ODR # 3519-1213AS only." Id. Second, he
addressed the request for a continuance, which he interpreted to
be in reference to the remaining IEE Complaint. ECF No. 10-9. He
explained that counsel's email failed to comply with his
instructions, as it did not describe the emergency or say when
the parent would be available. Concluding that "[i]t is
insufficient for the Parent to simply announce that there is an
emergency that precludes participating during any of the three
hearing dates that were scheduled over two months ago without
saying what that emergency is or estimating when that emergency
will be over," the Hearing Officer denied the request for a
continuance, but granted Plaintiffs leave to file a new request
that complied with his instructions. Id.

Plaintiffs' counsel responded the next day, January
22, 2013 (the day before the scheduled hearing), but did not
provide any more details regarding the parent's family
emergency. She explained that she could not offer a date that
the parent would be available for another hearing, and that she
"believe[d] she ha[d] complied with the Hearing Officer's
request to know the nature of the parents [sic] emergency: **It
was a family emergency**." ECF No. 10-10 (emphasis in original).
Counsel also objected to what she perceived to be the Hearing
Officer's decision to "bifurcate" the two matters, stating that
the parent did not "want the two hearings separated since the

5

Hearing Officer has scheduled them to [be] conducted together."
Id.

The Hearing Officer replied that evening, explaining
that no hearing on the FAPE Complaint would be held because it
had been dismissed, but that oral argument would proceed as
scheduled on the IEE Complaint. He stated that "[c]ounsel for
both parties are expected to be present even if the Parent
himself cannot attend," and he explained that it was not within
his power to grant an indefinite continuance of the proceeding.
Id. Nonetheless, he indicated that he would entertain a renewed
continuance request at the hearing and that Plaintiffs' counsel
should be prepared "to answer questions about when the Parent
may be able to attend a hearing in the future." Id.

The due process hearing on the District's IEE
Complaint began as scheduled the next morning, on January 23,
2013. Hearing Officer Decision 1. Neither the parent nor
Plaintiffs' counsel attended. At the start of the hearing, the
Hearing Officer again considered Plaintiffs' written motion for
a continuance and heard the District's renewed objection to the
motion. Id. at 3. He denied the motion for the same reasons
expressed previously, and the hearing then proceeded without the
parent or counsel in attendance. Id. Based on the evidence
presented at the hearing, which included both parties'
documentary evidence but only the District's witnesses, the

6

Hearing Officer concluded that the District's Evaluation Report
was appropriate and that the parent was not entitled to an IEE
at public expense. Id. at 11.

Plaintiffs filed the instant action on April 29, 2013.
Defendant filed a motion to dismiss and to strike Plaintiffs'
complaint, as well as a motion for sanctions. After Plaintiffs
failed to respond to either motion, the Court held a hearing on
October 8, 2013. Then, pursuant to a Court order, Plaintiffs
filed a nunc pro tunc motion for extension of time to respond
and attached a proposed response. Upon consideration of the
parties' submissions, the Court gave notice that it intends to
treat Defendant's motion to dismiss as a motion for summary
judgment, in accordance with Federal Rule of Civil Procedure
12(d). Order, Feb. 12, 2014, ECF No. 25. Both parties filed
supplemental submissions and the motion is now ripe for
resolution.

## II.   LEGAL STANDARD

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact." Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## III. DISCUSSION

Plaintiffs make two primary assertions in their complaint. First, they say that the District's treatment of A.S. deprived her of a free and appropriate public education and violated various other provisions of the IDEA. Second, they contend that, by conducting the due process hearing ex parte, the Hearing Officer violated Plaintiffs' due process rights and failed to provide an impartial hearing as required by the IDEA.

8

Based on those assertions, Plaintiffs bring claims under the IDEA, § 504 of the Rehabilitation Act of 1973, 42 U.S.C. § 1983, the Pennsylvania Constitution, and the Fourteenth Amendment to the United States Constitution. They ask that the Court either award them compensatory damages, or remand the case with the instruction that a new Hearing Officer be assigned to conduct a due process hearing.

The District contends that all of Plaintiffs' claims fail as a matter of law. First, it says that the claims arising from the alleged denial of a free and appropriate public education have not been exhausted because Plaintiffs voluntarily withdrew the FAPE Complaint. As for the allegations regarding the due process hearing, the District asserts that they fail to state a claim upon which relief can be granted. The Court addresses each contention in turn, using the summary judgment standard outlined above.

A. Exhaustion

Before filing a civil action seeking relief available under the IDEA, a plaintiff must exhaust the administrative remedies available under that statute. Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 281 (3d Cir. 1996) (citing 20 U.S.C. § 1415). As the Supreme Court has explained, allowing an IDEA claim to proceed in federal court without requiring exhaustion would not only

> render superfluous most of the detailed
> procedural protections outlined in the
> statute, but, more important, it would also
> run counter to Congress' view that the needs
> of handicapped children are best
> accommodated by having the parents and the
> local education agency work together to
> formulate an individualized plan for each
> handicapped child's education.

Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778

(3d Cir. 1994) (quoting Smith v. Robinson, 468 U.S. 992, 1011-12

(1984)). The administrative process "offers an opportunity for

state and local agencies," as well as educational authorities

and medical personnel, "to exercise discretion and expertise in

fields in which they have substantial experience." Id. at 779.

It also provides "a means to develop a complete factual record,"

id., and the Hearing Officer's factual findings are accorded

substantial deference on appeal, see S.H. v. State-Operated Sch.

Dist., 336 F.3d 260, 270 (3d Cir. 2003). For all of those

reasons, courts have strictly adhered to the rule that, except

in a few limited circumstances not applicable here, an aggrieved

party must "complete the administrative process before resorting

to federal court." Komninos, 13 F.3d at 778.

        Here, the record clearly establishes that Plaintiffs

voluntarily withdrew the FAPE Complaint against the District,

and the Hearing Officer never reached a decision on the merits

of the claims it asserted. Those claims include many of the

allegations raised in the instant Complaint; in particular, the

FAPE Complaint alleged that the District failed to comply with the "child find" requirement and improperly removed A.S. from her school, depriving her of a free and appropriate public education. See ECF Nos. 10-3 & 10-8. Because those claims were never addressed at the administrative level, they have not been exhausted, and this Court lacks jurisdiction to review them in the first instance. Indeed, the only IDEA claim addressed in the Hearing Officer's decision is the assertion that Plaintiffs are entitled to an IEE at public expense. Accordingly, the Court will dismiss all of Plaintiffs' substantive IDEA claims that do not relate to the IEE issue.

B. The Due Process Hearing

Plaintiffs' second assertion is that the due process hearing regarding the IEE Complaint, the Complaint which did go forward, did not comply with the procedural safeguards of the IDEA and infringed Plaintiffs' right to due process. Plaintiffs do not directly challenge the substance of the Hearing Officer's decision denying an IEE at public expense. Instead, Plaintiffs contend that the hearing should not have been conducted ex parte, that the parent's expert witness was denied an opportunity to testify, and that the Hearing Officer was not "fair and impartial" to Plaintiffs. See Compl. ¶ 2, 22-25. The Court therefore construes Plaintiffs' claims regarding the due

process hearing to be a procedural challenge to the Hearing Officer's decision regarding the IEE Complaint.

The IDEA requires that the parties involved in an IDEA complaint "have an opportunity for an impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A). Furthermore, both the IDEA and Pennsylvania law impose specific procedural safeguards on due process hearings, which include "the right to be accompanied and advised by counsel" and "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." Id. § 1415(h); see also 22 Pa. Code § 14.162(i), (l), (m). In addition to those statutorily enumerated safeguards, "[d]ue process principles apply to quasi-judicial or administrative proceedings." Kowenhoven v. Cnty. of Allegheny, 901 A.2d 1003, 1009-10 (Pa. 2006). Thus, in accordance with those principles, "there must be notice, an opportunity to present one's cause, a proceeding appropriate to the character of the particular case, and an adjudication of the same nature as is present in other cases." D.Z. v. Bethlehem Area Sch. Dist., 2 A.3d 712, 720 (Pa. Commw. Ct. 2010) (quoting Petition of Kariher, 131 A. 265, 270 (Pa. 1925)). Because "[t]he concept of due process is a flexible one," the specific safeguards required may vary based upon the situation. Id. at 721.

It is beyond dispute that a due process hearing was scheduled for January 23, 2013, and that Plaintiffs had ample

notice of that hearing date. At issue is whether the Hearing Officer's denial of the request for a continuance, which Plaintiffs acknowledge occurred "days before" the scheduled hearing date, resulted in a violation of due process or of the IDEA's procedural safeguards.

Under Pennsylvania law, special education hearing officers have the authority to "regulate the course of hearings, including the scheduling thereof . . . and the recessing, reconvening, and the adjournment thereof." Id. at 734 (quoting 1 Pa. Code § 35.187(1)). If a party desires a continuance of an administrative hearing, the request generally must "be by motion in writing, timely filed with the agency, stating the facts on which the application rests." Id. (quoting 1 Pa. Code § 31.15(b)). When such a motion is filed, "[t]he decision to grant or deny a request for a continuance is within the sole discretion of the hearing examiner." Id.

This Court's review of the denial of a continuance is therefore "limited to determining whether the hearing examiner abused his discretion." Id. Under that deferential standard of review, the Court must "abide by the agency's decision absent bad faith, fraud, capricious action or abuse of power." Id. at 722 (internal quotation marks omitted). "The fact that a reviewing court may have a different opinion is not sufficient to interfere with the agency's action and judicial discretion

13

may not be substituted for administrative discretion." Id.
(quoting Giant Food Stores, LLC v. Dep't of Health, 808 A.2d
299, 304 (Pa. Commw. Ct. 2002)) (alteration omitted).

        In D.Z. v. Bethlehem Area School District, the
Commonwealth Court of Pennsylvania considered whether a special
education hearing officer had abused his discretion by denying a
motion for a continuance. The parent in that case had twice
requested a continuance prior to the hearing date, but had not
filed a written motion to that effect. Id. at 735. At the
hearing, the parent explained that, in light of the hearing
officer's decision to narrow the scope of the hearing, she did
"not have enough time to prepare" and wanted the proceeding to
be continued. Id. The hearing officer considered that argument,
but found the parent's concerns about her ability to prepare "to
be unfounded" and denied the request. Id. The parent then
declined to participate in the hearing. Id. After warning the
parent that "her refusal to participate would result in
termination of the proceedings," the hearing officer ended the
hearing and issued a decision dismissing the parent's complaint
with prejudice for failure to meet her burden of proof. Id. at
719. On these facts, the D.Z. court found no abuse of discretion
in the hearing officer's decision, explaining that "the Hearing
Officer did not deny [the parent] her right to fully participate
in the proceedings; rather, she declined an opportunity to do

                                14

so." Id. at 735. The reviewing court also agreed with the
hearing officer that the parent had "ample opportunity to
prepare for the proceeding." Id.

The D.Z. court distinguished the case from two other
cases in which Pennsylvania courts had concluded that an
administrative officer abused his discretion by denying a
continuance request. In Thomas v. Unemployment Compensation
Board of Review, 543 A.2d 600 (Pa. Commw. Ct. 1988), the court
held that it was an abuse of discretion to deny a continuance to
a claimant who could not attend a hearing because he was
incarcerated. Similarly, in Shegan v. Unemployment Compensation
Board of Review, 564 A.2d 1022 (Pa. Commw. Ct. 1989), the court
held that an unemployment compensation referee should have
granted a continuance to allow the claimant to attend a job
interview out of state. The court in Shegan emphasized that the
request for a continuance was "based upon proper cause," as it
would be contrary to the goals of the unemployment compensation
law to "penalize the unemployed who are actively seeking re-
employment." Id. at 1025 & n.5. The D.Z. court explained that,
unlike those cases – where the denial of the continuance
prevented the claimant from attending the hearing or presenting
evidence – the parent in D.Z. chose not to be heard. D.Z., 2
A.3d at 736. Accordingly, under the teachings of D.Z., it is
within a hearing officer's discretion to deny a continuance if

15

the basis for the denial is proper and the decision does not effectively bar the claimant from participating in the administrative process.[1]

Here, the Hearing Officer denied the continuance request because Plaintiffs repeatedly failed to specify the reason for the request and did not give an estimate as to when the parent would be available for a hearing. The Hearing Officer provided a valid reason for requesting that information: without it, the continuance would amount to an indefinite stay of proceedings. The Hearing Officer was willing to entertain the request for a continuance, if Plaintiffs could provide a valid basis for their request – either some explanation of the emergency that would justify the need for an indefinite delay, or some indication of how long the emergency would last. Plaintiffs provided neither. The Hearing Officer could therefore identify no legitimate basis for a continuance, and denied the request. Under these circumstances, that decision falls within the Hearing Officer's authority to regulate the scheduling of

---

[1]    In both Thomas and Shegan, the party requesting the continuance provided a specific reason for the request. Based on that reason, the reviewing court determined the denial of the request was an abuse of discretion. Here, on the other hand, the parent stated only that there was a "family emergency," and, despite prompting from the Hearing Officer, he declined to elaborate. A simple incantation to "family emergency" is insufficient to inform the exercise of discretion by the Hearing Officer.

hearings, see 1 Pa. Code § 35.187(1), and there is no evidence
that it reflects any "bad faith, fraud, capricious action or
abuse of power" on the part of the Hearing Officer, see D.Z., 2
A.3d at 722. While due process certainly commands that the
Hearing Officer consider the reason(s) for the continuance
request, this mandate dissipates when the parent fails to
provide any specific reason for it. As the court in D.Z.
explained, "due process standards do not guarantee a party a
right a continuance, even for good reason, if he fails to
request it in a timely fashion or in a manner consistent with
reasonable procedural rules." 2 A.3d at 735 (citing Steadwell v.
Unemployment Comp. Bd. of Review, 463 A.2d 1298 (Pa. Commw. Ct.
1983)). Accordingly, under the circumstances presented here, the
Court concludes that the Hearing Officer did not abuse his
discretion in denying the request for a continuance.

After denying Plaintiffs' request for a continuance,
the Hearing Officer conducted the hearing as scheduled on
January 23, 2013. Although Plaintiffs were not in attendance,
the Hearing Officer considered all of the evidence presented,
(which included the District's witnesses and both parties'
documentary evidence), concluded that the District's Evaluation
Report was proper, and issued a written decision denying
Plaintiffs' request for an IEE at public expense. The Court

discerns no procedural error in those actions[2] and, as discussed above, Plaintiffs do not challenge the substance of the Hearing Officer's decision. The Court will therefore dismiss Plaintiffs' claims regarding the IEE Complaint and the due process hearing.[3]

---

[2]    The fact that the hearing was conducted ex parte does not render it procedurally improper. Neither the IDEA nor state law expressly bars ex parte due process hearings. Furthermore, ex parte hearings are not a per se violation of due process principles, and indeed are permitted in numerous situations, depending on the circumstances. See, e.g., Miller v. City of Phila., 174 F.3d 368, 374 (3d Cir. 1999) (permitting ex parte emergency child custody hearings even when the parent is available to participate); United States v. Amawi, 695 F.3d 457, 470 (6th Cir. 2012) (discussing when ex parte hearings are appropriate); United States v. Abuhamra, 389 F.3d 309, 332 (2d Cir. 2004) (describing when evidence may be presented ex parte in criminal matters).

    In this case, the Hearing Officer's decision to conduct the hearing in the parent's absence was specifically permitted by ODR policy. The ODR's "Special Education Dispute Resolution Manual" provides that, if a party fails to appear, the hearing officer must attempt to contact the absent party, and then, "in his or her discretion, determine whether the hearing should proceed in the absence of the party who does not appear." Office of Dispute Resolution, Pennsylvania Special Education Dispute Resolution Manual § 507, available at odr-pa.org/wp-content/uploads/pdf/Dispute-Resolution-Manual.pdf (last visited April 3, 2014). If the hearing officer proceeds with the hearing despite the absence of the parent, the Manual requires that the hearing be closed to the public and that the hearing officer state on the record "the circumstances known to the hearing officer surrounding the party's failure to appear." Id. Both of those steps were taken in this case. Compliance with the Dispute Resolution Manual further demonstrates that the Hearing Officer's actions were not arbitrary or procedurally irregular. See D.Z., 2 A.3d at 720 (explaining that due process principles require "an adjudication of the same nature as is present in other cases").

[3]    Plaintiffs also suggest that the Hearing Officer was not fair or impartial because, prior to the hearing, the

C. 42 U.S.C. § 1983

    In addition to their IDEA and constitutional claims, Plaintiffs also seek recovery under 42 U.S.C. § 1983, contending that § 1983 "permits a suit for monetary damages against a school district who under color of law deprives another individual a right guaranteed by . . . the IDEA or Section 504." Compl. ¶ 39. That is no longer the law in this circuit. In A.W. v. Jersey City Public Schools, the Third Circuit held in an en banc decision that § 1983 is not available to remedy alleged violations of the IDEA or the Rehabilitation Act. 486 F.3d 791, 803-05 (3d Cir. 2007).

**IV.  CONCLUSION**

    For the foregoing reasons, the Court concludes that all of Plaintiffs' claims fail as a matter of law. Accordingly, the Court will grant Defendant's motion and dismiss Plaintiffs' complaint in its entirety. An appropriate order will follow.

---

District emailed him a previous decision by a different Hearing Officer that dismissed a different parent's claims due to current Plaintiffs' counsel's failure to disclose evidence in a timely fashion. Assuming arguendo that the email was procedurally improper, Plaintiffs have not demonstrated that it proved prejudicial to their case. See D.Z., 2 A.3d at 721 ("Demonstrable prejudice is a key factor in assessing whether procedural due process was denied."). The Hearing Officer ruled against Plaintiffs because he found that the District's Evaluation Report was appropriate, not due to any failure to disclose evidence. See Hearing Officer Decision 8-11.